**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

HOMEVESTORS OF AMERICA, INC.,

    *Plaintiff*,

v.

TROY TOLIVER,

    *Defendant.*

No. 20-cv-3496 (DLF)

**MEMORANDUM OPINION & ORDER**

Before the Court is the plaintiff's Motion for Judgment by Default. Dkt. 14. The plaintiff, HomeVestors, is a franchisor that licenses its registered trademarks to its franchisees, investors that buy and sell distressed real estate. *See* Compl. ¶¶ 15–16, Dkt. 1. Like some of HomeVestors's franchisees, the defendant, Toliver, invests in distressed real estate in the D.C. metropolitan area. *See id.* ¶¶ 6, 17–18. Toliver advertised his services online using HomeVestors's trademark. *See id.* ¶ 18. In response, HomeVestors notified Toliver of his improper use and demanded that he stop immediately. *See id.* ¶¶ 20–21. He did not. *See id.* HomeVestors then filed a civil complaint against Toliver, Dkt. 1, and the instant motion for a default judgment, Dkt. 14. Despite the proper service of both documents, Toliver still has not responded. *See* Aff. of Service, Dkt. 9; Am. Certificate of Service, Dkt. 15; Pl.'s Mem. in Supp. of Mot. for J. by Default at 1, Dkt. 14-1. In its motion for a default judgment, HomeVestors seeks as its sole remedy a permanent injunction. *See* Pl.'s Mem. at 10. For the reasons that follow, the Court will grant the motion and issue a permanent injunction.

**I.    BACKGROUND**[1]

The plaintiff, HomeVestors of America, Inc., brings this suit alleging the following claims: (1) trademark infringement and counterfeiting, in violation of Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a); and (2) trademark infringement, unfair competition, and false designation of origin, in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).  *See* Compl. ¶¶ 24–40.

HomeVestors is a real-estate franchisor based in Dallas, Texas, with hundreds of franchisees across the country, including in the District of Columbia.  *See id.* ¶¶ 10, 16.  The company is known for its slogan "WE BUY UGLY HOUSES," a phrase that it has owned as a registered trademark since 2003.  *Id.* ¶ 9; *see also* Report on the Filing or Determination of an Action Regarding a Patent or Trademark, Dkt. 6 (detailing more than 40 other trademarks owned by HomeVestors, around half of which are variations of "WE BUY UGLY HOUSES," and more than half of which are incontestable).  As HomeVestors's trademark implies, the company's franchisees buy homes (not just ugly ones) and repair them for sale or rental.  *See* Compl. ¶¶ 8–9.  To market those services, HomeVestors's franchisees advertise widely using the company's recognizable trademarks.  *See id.* ¶¶ 15–16.

Among HomeVestors's competitors are Toliver and his related real-estate-investment businesses (collectively, "Toliver") that also "buy[] and sell[] houses in distressed situations." *Id.* ¶ 17.  From time to time, those competitors improperly use HomeVestors's trademarks. Indeed, this case is not the first of its type as HomeVestors actively polices the improper use of its trademarks across the country.  *See, e.g.*, *HomeVestors of Am., Inc. v. Bay Area Hauling,*

---

[1] "As a result of the entry of default, the court construes all well-pleaded allegations in the complaint as admitted." *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 68 (D.D.C. 2011) (citation omitted).

*LLC*, No. 8:18-CV-1377-T-36AAS, 2019 WL 5394189 (M.D. Fla. Sept. 10, 2019); *HomeVestors of Am., Inc. v. Fantini*, No. 18-CV-3741, 2018 WL 4783969 (E.D.N.Y. Oct. 1, 2018); *HomeVestors of Am., Inc. v. LeGate*, No. 3:12-CV-01850-P, 2013 WL 3348948 (N.D. Tex. July 3, 2013); *Homevestors of Am., Inc. v. Homebuyers, L.L.C.*, No. 3:07-CV-296, 2009 WL 10694134 (N.D. Ind. May 4, 2009).

In July 2019, HomeVestors discovered that Toliver was unlawfully using its trademarks, and it sent him a letter demanding that he "cease using the infringing marks in any manner related to real estate acquisition or related services." Compl. Ex. C, at 2, Dkt. 1-3. Toliver did not cease. *See* Compl. ¶ 20. In January 2020, HomeVestors sent Toliver "another cease and desist letter and attached a draft of [its complaint] and supporting exhibits." *Id.* ¶ 21. With no response from Toliver for nearly a year, HomeVestors filed this action. *See id.*

Serving Toliver proved difficult. *See* Req. to Reissue Summons, Dkt. 7; Req. for Default ¶ 2, Dkt. 10. But in February 2021, HomeVestors eventually served Toliver through his housemate. *See* Aff. of Service. Toliver failed to answer HomeVestors's complaint. *See* Req. for Default ¶ 6. HomeVestors therefore requested an entry of default and notified Toliver of its request. *See* Req. for Default; Proof of Service, Dkt. 10-3. Toliver still did not respond. *See* Pl.'s Mem. at 1.

The Clerk of Court entered default on April 23, 2021, Entry of Default, Dkt. 12, upon which Toliver effectively admitted "all well-pleaded [factual] allegations in the complaint," *Elite Terrazzo Flooring*, 763 F. Supp. 2d at 68. HomeVestors now moves for entry of a default judgment, *see* Mot. for Default J., seeking a permanent injunction against Toliver but neither damages nor attorney's fees, *see* Pl.'s Mem. at 10–11.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure empower district courts to enter default judgment against a defendant who fails to defend its case. *See* Fed. R. Civ. P. 55(b)(2); *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980). Although courts generally favor resolving disputes on their merits, default judgments are appropriate "when the adversary process has been halted because of an essentially unresponsive party." *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970). Obtaining a default judgment is a two-step process which "allows the defendant the opportunity to move the court to set aside the default before the court enters default judgment." *Carpenters Labor-Mgmt. Pension Fund v. Freeman-Carder LLC*, 498 F. Supp. 2d 237, 239 n.1 (D.D.C. 2007). First, the plaintiff must request that the Clerk of Court enter default against a party that has failed to plead or otherwise defend. *See* Fed. R. Civ. P. 55(a). The Clerk's entry of default establishes the defendant's liability for the well-pleaded allegations in the complaint. *See Boland v. Providence Constr. Corp.*, 304 F.R.D. 31, 35 (D.D.C. 2014). Second, the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). At that point, the plaintiff "must prove his entitlement to the relief requested using detailed affidavits or documentary evidence on which the court may rely." *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 103 (D.D.C. 2015) (internal quotation marks and alterations omitted). "[T]he defendant's default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief." *Jackson v. Corr. Corp. of Am.*, 564 F. Supp. 2d 22, 27 (D.D.C. 2008) (internal quotation marks omitted). Likewise, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). A successful

plaintiff may be entitled to injunctive relief, in addition to damages.  *See Foxtrap, Inc. v. Foxtrap, Inc.*, 671 F.2d 636, 639–40 (D.C. Cir. 1982).

### III. ANALYSIS

Default judgments are appropriate when "the adversary process has been halted because of an essentially unresponsive party." *H.F. Livermore*, 432 F.2d at 691.  This is one such case.  By failing to file an answer or otherwise defend this action, Toliver has admitted the well-pleaded allegations of in HomeVestors' complaint.  And having proven the elements of its alleged trademark infringement claims, HomeVestors is entitled to the sole relief it seeks—a permanent injunction.

#### A. Toliver's Unresponsiveness Satisfies the Standard for a Default Judgment

To warrant a default judgment a defendant must be "essentially," if not "totally[,]" unresponsive."  *Compare id.* (requiring a party to be "essentially unresponsive"), *with Jackson*, 636 F.2d at 836 (recasting "essentially unresponsive" from *H.F. Livermore* as "totally unresponsive"), *and Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008) (following *Jackson*).  Whatever the standard—essential or total unresponsiveness—Toliver has met it here.  Toliver's failure to defend this case has been "plainly willful, reflected by [his] failure to respond to the summons and complaint, the entry of default, [and] the motion for default judgment." *Auxier Drywall*, 531 F Supp. 2d at 57 (citation omitted).  On the plaintiff's first attempt, Toliver could not be found for service of the complaint. *See* Req. to Reissue Summons.  And when he was eventually found and served, *see* Aff. of Service, he failed to answer the complaint or seek an extension to do so.

The record reveals that HomeVestors, as it did with the complaint, went to great lengths to serve Toliver with the instant motion.  First, HomeVestors made two attempts at Toliver's

5

former address, the address where it had served Toliver the complaint. *See* Aff. of Due Diligence, Dkt. 16. Then, upon discovering Toliver's new address, HomeVestors made four more attempts to serve Toliver there. *See id.* In its attempts, HomeVestors never found Toliver himself, but it confirmed with the building concierge that Toliver lived at that address—indeed, "[the concierge] had seen Mr. Toliver in the lobby recently." *Id.* After six attempts and at least one call and one text message, *see id.*, HomeVestors served Toliver its motion for default judgment in June 2021 "via process server, FedEx and by certified mail, return receipt requested," Am. Certificate of Service; *see also* Aff. of Service, Dkt. 17. Now, nearly five months later, Toliver still has not responded. As HomeVestors's diligent efforts illustrate, Toliver has been "totally[,] unresponsive" to this lawsuit. *Jackson*, 636 F.2d at 836. As a result, HomeVestors "must be protected lest [it] be faced with interminable delay and continued uncertainty as to [its] rights." *H.F. Livermore*, 432 F.2d at 691.

### B. Toliver Has Violated and Continues to Violate the Lanham Act

Toliver's unresponsiveness and the Clerk's resultant entry of default require the Court to take as true all well-pleaded factual allegations in the complaint. *See Providence Constr.*, 304 F.R.D. at 35. Count I alleges that Toliver infringed upon and counterfeited HomeVestors's trademark, in violation of § 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a). *See* Compl. ¶¶ 24–32. This section prohibits the unauthorized use "of a registered mark in connection with the . . . offering for sale . . . or advertising of . . . services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). Count II alleges that Toliver infringed upon HomeVestors's trade name, misrepresented an association with HomeVestors, and (thus) competed unfairly, in violation of § 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). *See* Compl. ¶¶ 33–40. This section 1125(a)(1)(A)

prohibits the unauthorized use of "any word, term, [or] name, . . . or any false designation of origin, . . . [that] is likely to cause confusion, . . . or to deceive as to the affiliation . . . of such person with another person, or as to the . . . approval of his . . . commercial activities." 15 U.S.C. § 1125(a)(1)(A).

These two counts allege distinct, but similar, violations. And, indeed, these two provisions of the Lanham Act parallel one another. The principal difference is that § 43(a)(1)(A) does not require a registered trademark, while § 32(1)(a) does. *See Breaking the Chain Found., Inc. v. Capitol Educ. Support, Inc.*, 589 F. Supp. 2d 25, 29 (D.D.C. 2008). "While Counts [I] and [II] may appear to internally allege many different grievances—i.e., trademark infringement, false designation of origin, passing off, and unfair competition—courts have announced that the elements for each of the aforementioned causes-of-action mirror those for a claim of trademark infringement." *Globalaw Ltd. v. Carmon & Carmon L. Off.*, 452 F. Supp. 2d 1, 26 (D.D.C. 2006) (citations omitted); *Am. Ass'n for Advancement of Sci. v. Hearst Corp.*, 498 F. Supp. 244, 262 (D.D.C. 1980) (noting that "the essential elements are the same for either a trademark infringement or unfair competition action" and that "the remedy for unfair competition, injunctive relief, is the same as that provided by the infringement law"). To succeed on a trademark infringement claim, "the plaintiff must show (1) that it owns a valid [or registered] trademark, (2) that its trademark is distinctive or has acquired a secondary meaning, and (3) that there is a substantial likelihood of confusion between the plaintiff's mark and the alleged infringer's mark." *Breaking the Chain*, 589 F. Supp. 2d at 29 (quoting *Globalaw Ltd.*, 452 F. Supp. 2d at 26–27).

Under its well-pleaded and now-accepted facts, HomeVestors meets all three elements for both trademark infringement claims. First, HomeVestors owns at least four incontestable

7

registered trademarks—six including Spanish translations—with the text "WE BUY UGLY HOUSES." Report, Dkt. 6. Second, HomeVestors's trademark is distinctive and has acquired secondary meaning as HomeVestors's slogan. In part, HomeVestors's franchisees' $40 million annual advertising budget suggests the mark's distinctiveness, *see* Compl. ¶ 15, as does HomeVestors's nationwide presence and hundreds of franchisees, *see* Compl. ¶ 16. The mark's status as incontestable also commands its distinctiveness. *See* Compl. Ex. A, Dkt. 1-1. To acquire a registered trademark—let alone an incontestable one—an entity must show at least enough distinctiveness to satisfy the Lanham Act. *See* 15 U.S.C. § 1052(f) (recognizing that if a mark has been used exclusively and continuously for at least five years, such use is "prima facia evidence that the mark has become distinctive"); 15 U.S.C. § 1115(b) (providing that incontestability shows "conclusive evidence of the validity . . . of the registrant's exclusive right to use the registered mark in commerce"); *Paleteria la Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. DE C.V.*, 188 F. Supp. 3d 22, 105 (D.D.C. 2016), *aff'd*, 743 F. App'x 457 (D.C. Cir. 2018) (finding that § 1115(b) means "that an incontestable mark is conclusively presumed to be distinctive or to have secondary meaning"). Of course, if a trademark (even an incontestable one) becomes generic or abandoned, the Patent and Trademark Office may cancel the trademark's registration. *See* 15 U.S.C. § 1064. But that is far from the situation here. The "WE BUY UGLY HOUSES" mark is not generic but distinct to HomeVestors, and HomeVestors has not abandoned it. HomeVestors's active policing of its mark, as evidenced by this case and others, *see, e.g.*, *HomeVestors of Am., Inc. v. Bay Area Hauling, LLC*, No. 8:18-CV-1377-T-36AAS, 2019 WL 5394189 (M.D. Fla. Sept. 10, 2019); *HomeVestors of Am., Inc. v. Fantini*, No. 18-CV-3741, 2018 WL 4783969 (E.D.N.Y. Oct. 1, 2018), demonstrates as much. Finally, Toliver has used HomeVestors's registered trademarks, *see* Compl. ¶¶ 17–19; Report—

namely its trademarked iterations of "WE BUY UGLY HOUSES"—on his website, Compl. Ex. B, Dkt. 1-2; *TROY T BUYS HOUSES $$$*, https://www.troytbuyshouses.com/ (last accessed Dec. 15, 2021) (advertising 48 times on the home page that "We Buy Ugly Houses" and to "CONTACT -Troy Toliver"). Toliver's use of HomeVestors's mark has a substantial likelihood of misleading customers into believing that Toliver is affiliated with HomeVestors. Given that Toliver does the same work in the same location as HomeVestors' franchisees, his use of the company's trademark is all the more misleading. *See* Compl. ¶¶ 10, 17–19. Through his default, Toliver admits this potential confusion, *see* Compl. ¶¶ 19, 22, 26, 35, 42, in addition to the other two elements of HomeVestors's trademark infringement claims.

### C. Toliver's Ongoing Trademark Infringement Justifies a Permanent Injunction

Having proven its claims, HomeVestors seeks only one remedy: a permanent injunction. As the Supreme Court has held, the owner of an incontestable trademark has such a right in these circumstances. *See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 196 (1985) (Section "33(b)'s declaration that the registrant has an 'exclusive right' to use the mark indicates that incontestable status may be used to enjoin infringement by others." (quoting 15 U.S.C. § 1115(b)); *see also Foxtrap*, 671 F.2d at 639 ("Although an injunction is traditionally available only if the remedy at law is inadequate, 'it is difficult to imagine an unfair competition case where damages are adequate.' Denying injunctive relief would force a plaintiff to endure continuing infringement and to bring successive suits for money damages." (quoting 2 J. Thomas McCarthy, *Trademarks and Unfair Competition* 328–29 (1973))). The Lanham Act allows injunctions for infringement like this, *see* 15 U.S.C. § 1116, and HomeVestors has shown that Toliver's infringement warrants a permanent injunction.

As a threshold matter, to obtain a permanent objection, a plaintiff first must succeed on the merits. *See Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 544 n.12 (1987). As explained in section III.B above, HomeVestors has proven that Toliver infringed on its trademark. Next, the plaintiff must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law . . . are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (citations omitted). HomeVestors meets these permanent injunction requirements too.

First, "it is generally recognized that trademark infringement by its very nature causes irreparable injury." *Breaking the Chain*, 589 F. Supp. 2d at 30 (internal quotation marks and citation omitted). The injury here—albeit hard to quantify, particularly without Toliver's income statements and customer surveys—springs from the misleading nature of Toliver's advertising for the same work in the same location as HomeVestors. The likelihood of confusion between these competitors is significant. After all, the homepage of Toliver's website uses HomeVestors's trademarked slogan "We Buy Ugly Houses" 48 times. *See TROY T BUYS HOUSES $$$*, https://www.troytbuyshouses.com/ (last accessed Dec. 15, 2021). This confusion has diluted and continues to dilute the value of HomeVestors's trademark. That is, in essence, Toliver has stolen and continues to steal from HomeVestors. *See Ubeda v. Zialcita*, 226 U.S. 452, 454 (1913) ("[T]he earlier trademark was in widespread use and well known, and the obvious intent and necessary effect of imitating it was to steal some of the good will attaching to it and to defraud the public.").

Second, this ongoing injury cannot be repaired by monetary damages alone.  *See Paleteria la Michoacana*, 188 F. Supp. 3d at 117 ("Monetary relief, which [the plaintiff] does not seek, would be inadequate to cure the harm that [the plaintiff] has suffered and will suffer absent an injunction.") (citation omitted); 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:1 (4th ed. 2016) ("Like trying to un-ring a bell, trying to 'compensate' after the fact for damage to business goodwill and reputation cannot constitute a just or full compensation.").  Indeed, HomeVestors withdrew its initial request for monetary damages, *see* Compl. ¶ 29, and now seeks only an injunction, *see* Pl.'s Mem. at 10–11.

Third, the balance of hardships tilts fully in favor of HomeVestors.  HomeVestors's has used its slogan exclusively for enough time to achieve and maintain an incontestable trademark.  Enjoining Toliver's improper use will reduce HomeVestors's hardship.  As for Toliver, his hardship is minimal: He must stop infringing upon HomeVestors's trademark, which likely requires no more than removing the word *ugly* from his advertisements.

Fourth and finally, the public interest favors protecting HomeVestors's property rights and upholding the law.  *See Breaking the Chain*, 589 F. Supp. 2d at 30 ("[P]ublic interest favors protecting against further violation of federal trademark laws."); *see also AARP v. Sycle*, 991 F. Supp. 2d 224, 230 (D.D.C. 2013) (granting a permanent injunction for trademark violation on default judgment).

Accordingly, this Court will permanently enjoin Toliver from further violating HomeVestors's trademark rights.

## IV.     CONCLUSION

For the foregoing reasons, HomeVestors's motion for default judgment is granted.  Accordingly, it is

**ORDERED** that the plaintiff's Motion for Judgment by Default, Dkt. 14, is **GRANTED**.

A final judgment that specifies the injunctive relief awarded will issue forthwith.

**SO ORDERED**.

December 20, 2021

DABNEY L. FRIEDRICH
United States District Judge